```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

**KURT SCHELLHAAS**                                     **CIVIL ACTION**

**VERSUS**                                              **NO. 18-7979**

**SOUTHWEST AIRLINES CO.**                              **SECTION: "B"(4)**

<u>**ORDER AND REASONS**</u>

Before the Court are: (1) defendant Southwest Airlines Company's ("Southwest") motion for summary judgment (Rec. Doc. 31); (2) plaintiff Kurt Schellhaas' response in opposition (Rec. Doc. 54); and (3) Southwest's reply in support of their motion for summary judgment (Rec. Doc. 47). For the reasons discussed below,

**IT IS ORDERED** that Southwest's motion for summary judgment (Rec. Doc. 31) is **GRANTED**;

**IT IS FURTHER ORDERED** that defendant's motions in limine (Rec. Docs. 32, 51) are **DISMISSED AS MOOT.**

**FACTUAL BASIS AND PROCEDURAL HISTORY**

Plaintiff Kurt Schellhaas is a resident of Jefferson Parish, Louisiana. Rec. Doc. 1 at 1. Defendant Southwest is a Texas corporation with a registered agent in Baton Rouge, Louisiana. *Id*. Plaintiff seeks monetary damages from Southwest for employment practices in violation of both federal and state statutes. *Id*. at 1-3.[1]

---

[1] In a prior Order and Reasons, plaintiff's claim pursuant to the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 621,

1

In February 1979, plaintiff began working with Southwest as a ramp agent. *Id*. at 4. He worked with Southwest for approximately 38 years. *Id*. at 3. His most recent position was that of Cargo Customer Service Supervisor. *Id*. at 4. As Cargo Customer Service Supervisor, plaintiff was responsible for scheduling, training, and supervising a team of Freight Agents who assisted in shipping and receiving cargo. Rec. Doc. 31-5 at 1, *Affidavit of Bridget Butler*.

On December 21, 2017, at the age of 59, he was discharged by Southwest's Supervisor of Ramp Operations, Adrian Cummins, and the New Orleans Station Manager, Cindy Perrino. Rec. Doc. 1 at 3, 4. Cindy Perrino supervised plaintiff from the time she became Station Manager in 2006 until his termination. Southwest's stated reason for plaintiff's discharge was that he shipped a generator in violation of the company's safety policy. *Id*. at 4.[2] Southwest has had a long-standing prohibition against shipping internal combustion engines. Southwest's Safe Transportation of Regulated Materials Manual states in pertinent part:

> Internal Combustion engines are considered Class 9 Miscellaneous HAZMAT if they have a trace of fuel present. Even engines that have been drained contain enough vapors to be considered a regulated material aboard an aircraft. Examples of internal combustion engines include weed trimmer, *generators*, chainsaws,

---

*et. seq*. (AIR 21) was dismissed for lack of federal subject matter jurisdiction. (Rec. Doc. 21 at 7).

[2] Plaintiff also notes in his complaint that "[he] sought and received specific approval for this particular generator shipment from other employees who also facilitated the shipment . . ." Rec. Doc. 1 at 6. However, this contention is never referenced again in response to the instant motion for summary judgment.

> lawnmowers, tillers, and engine-powered skateboards/scooters.
>
> *Southwest airlines prohibits and does not transport internal combustion engines whether they are used or new.*

Rec. Doc. 31-5 at 2, *Affidavit of Bridget Butler*.

Although Southwest's policy states generators are not permitted to be shipped, at one point, following Hurricane Maria, Southwest temporarily altered their shipping policy to allow *employees* to ship generators to Puerto Rico to assist with relief efforts for a ten (10) day period. Rec. Doc. 31-5 at 2, *Affidavit of Bridget Butler*. This stated change in policy was *temporary*, and only allowed for the shipment of generators by Southwest *employees*, not Southwest Customers. *Id*. Plaintiff admits he conducted the shipment on behalf of Southwest customer Sal's Seafood, using their account. Rec. Doc. 31-2 at 59-60, *Deposition of Plaintiff*. Plaintiff also claims that he believed the alteration to Southwest's longstanding prohibition was permanent, rather than temporary, and that the shipment of internal combustion engines no longer presented a safety risk. Rec. Doc. 54 at 4. Plaintiff alleges he was denied employment opportunities, promotions, and ultimately terminated because of his age. Rec. Doc. 1 at 6-7. Plaintiff alleges Southwest wanted to replace him with a younger and less-expensive employee. *See id*. at 4.

On February 18, 2018, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging age

discrimination and retaliation. *See id*. 8. On May 23, 2018, plaintiff received a right to sue letter from the EEOC. Thereafter, on August 21, 2018, plaintiff filed the instant suit alleging age discrimination under federal and state law as well as unlawful retaliation under the AIR 21 Act.[3] *Id*. at 8-9. Plaintiff alleges that he has suffered, *inter alia*, mental anguish, emotional distress, and loss of wages and benefits. *Id*. at 9.

On November 27, 2018, Southwest filed a motion to dismiss for lack of jurisdiction and failure to state a claim. *See* Rec. Doc. 8. The motion was granted in part with respect to plaintiff's claims pursuant to AIR 21 and denied in part with respect to plaintiff's claims under the ADEA and the LEDL. Rec. Doc. 21. Defendants have filed the instant motion for summary judgment, contending, among other things, that they are entitled to judgment as a matter of law because in discovery "plaintiff admitted that he could not identify any employment opportunities or promotions that Southwest denied him because of his age." Rec. Doc. 31-1 at 1.

### LAW AND FINDINGS

#### a. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[3] *See Supra* note 1.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

    The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

    **b. ADEA Claim**

A plaintiff bringing a discrimination claim pursuant to the ADEA must prove, by a preponderance of the evidence that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Claims brought pursuant to the ADEA are to be analyzed under the three-step, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell* framework:

> First, the employee must raise a genuine issue of material fact as to each element of his prima facie case. Then, the employer must articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, the employee must raise a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for age discrimination.

*Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001)(internal citations omitted).

### i. Exhaustion of Administrative Remedies

Defendant contends this Court should dismiss plaintiff's ADEA claim relating to the denial of employment opportunities and promotions, as he has not exhausted his administrative remedies with respect to those claims. Rec. Doc. 31-1 at 12.

To bring a claim under the ADEA, a plaintiff must first exhaust his administrative remedies. *See Patterson v. Houston Indep. Sch. Dist.*, 2012 U.S. Dist. LEXIS 192253, at *20 (S.D. Tex. 2012) citing to *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 489-90 (5th Cir. 2010); *Julian v. City of Houston, Tex.*, 314 F.3d 721, 725 (5th Cir. 2002). To properly exhaust his administrative remedies, the employee must file a charge with the EEOC and receive a notice of right to sue. *See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). The primary purpose of this exhaustion requirement is to trigger both the investigatory and conciliatory procedures of the EEOC, in attempt to reach a non-judicial resolution of the alleged discrimination. *See Pacheco*, 448 F.3d at 789.

The scope of inquiry stemming from an EEOC charge "in a Title VII action 'is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

7

discrimination.'" *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990)(internal citation omitted); *see also Kojin v. Barton Protective Servs.*, 339 F. Supp. 2d 923, 926 (S.D. Tex. 2004)("Under both Title VII and the ADEA, a lawsuit stemming from EEOC charges is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination."). Only those claims that are "like or related to" the charge's allegations are deemed to be exhausted by the charge filing. *See Cargo v. Kansas City S.*, 2009 WL 1808458, at *1 (W.D. La. June 22, 2009).

Further, "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." *Id.* at *2 (quoting *Turner v. St. Luke's Episcopal Health Sys.*, 2008 WL 706709, *8 (S.D. Tex. Mar.14, 2008). Instead, "[i]n order for a particular 'alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination.'" *George v. Diversified Foods & Seasonings,* Inc., 13-5388, 2014 WL 379381, at *3 (E.D. La. Feb. 3, 2014)(quoting *Turner*, 2008 WL 706709, at *8. Claims asserted in a lawsuit that do not fall within the purview of the EEOC charge and subsequent investigation, and

therefore do not satisfy the administrative exhaustion requirement, should be dismissed. *Id*. at *5.

This exact issue was ruled upon in our prior Order and Reasons regarding defendant's motion to dismiss for failure to state a claim. *See* Rec. Doc. 21. In that decision, we noted that plaintiff had exhausted his administrative remedies with respect to his claims under the ADEA. *Id*. Specifically, we noted that that plaintiff alleged: (1) that he was discharged due to his age; (2) facts to support that he exhausted his administrative remedies; and (3) that he filed a charge with the EEOC on February 18, 2018 and received a right to sue letter on May 23, 2019. *Id*. Defendant's argument is substantially similar to their assertions set forth in their original motion to dismiss, including with respect to whether plaintiff has shown that the claim is properly related to the EEOC filing. *See* Rec. Doc. 15-1; *see also* Rec. Doc. 31-1. Accordingly, this court finds, as it has done before, that plaintiff's claim should not be dismissed on that ground.

In discovery, plaintiff was specifically asked to "identify each and every employment opportunity at Southwest that you were denied because of your age as alleged in paragraphs IV(B) 9 and 10 of your complaint," he answered "none." Rec. Doc. 31-6 at page 11.

In our previous Order and Reasons, we held that defendant's contention that plaintiff failed to state a prima facie case of discrimination under the ADEA was unpersuasive, as "plaintiff

9

explicitly names Sean Reynold, who is allegedly more than 15 years plaintiff's junior, in his complaint." Rec. Doc. 21 at 9. Further, we noted that plaintiff and defendant both failed to include the EEOC charge, notwithstanding each parties' citations to the charge. *Id*. Here, although defendant has cited a purported admission by plaintiff that he can cite no employment opportunity or promotion which he was denied, and has cited his EEOC complaint, our prior holding still stands.

Although defendant contends that plaintiff has admitted to an inability to identify an employment opportunity or promotion that plaintiff was denied due to his age, the fact remains that plaintiff explicitly referred to Sean Reynolds, an employee who was given plaintiff's job after his termination, and who at the time was 15 years plaintiff's junior. *See* Rec. Doc. 1 at 4. This is evidence that a younger employee was treated differently with respect to the same alleged employment opportunity. Plaintiff's newly propounded answer to defendant's interrogatory, which seemingly conflicts with their prior arguments, does not sway our opinion. Plaintiff previously showed that a younger employee was treated differently from plaintiff, in his complaint. Rec. Doc. 21 at 9.

### ii. **Plaintiff Cannot Show that He Would Not Have Been Terminated, But for His Age, Under *McDonnell Douglas***

Plaintiff is not able to show in this summary judgment context that his termination would not have occurred but for his age as articulated in *McDonnell*.[4]

A plaintiff bringing a discrimination claim pursuant to the ADEA must prove, by a preponderance of the evidence that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Claims brought pursuant to the ADEA are to be analyzed under the three-step, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As previously noted, under the *McDonnell* framework:

> First, the employee must raise a genuine issue of material fact as to each element of his prima facie case. Then, the employer must articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, the employee must raise a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for age discrimination.

---

[4] The framework for analyzing plaintiff's ADEA claim is the same as the standard for analyzing LEDL claims under Louisiana Law. The Supreme Court of Louisiana noted in *Labove v. Raferty*, 802 So. 2d 566, 573 (La. 2001), "[b]ecause Louisiana's prohibition against age discrimination is identical to the federal statute prohibiting age discrimination, Louisiana courts have traditionally looked to federal case law for guidance." (citing *King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 6/4/99); 743 So. 2d 181, 187; *Barbe v. A.A. Harmon & Co.*, 94-2423 (La. App. 4 Cir. 1/7/98); 705 So. 2d 1210, writ denied, 98-0526 (La. 5/15/98); 719 So. 2d 462)). The Louisiana Supreme Court in *Labove* further stated:
> Disparate treatment cases are analyzed under the test developed for Title VII plaintiffs in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, 678 (1973). A prima facie case of employment discrimination based on age requires a showing that (1) the plaintiff is between forty and seventy years of age; (2) the plaintiff was qualified for the job at issue; and (3) an employee outside the protected class was treated more favorably. The theory of the *McDonnell Douglas* prima facie case is that the plaintiff must provide sufficient evidence to create an inference of unlawful intent, and the defendant, at the close of the plaintiff's evidence, generally challenges the prima facie case by a motion for directed verdict.

*Id*. at 573 (internal citations omitted).

*Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001)(internal citations omitted).

Plaintiff's initial burden to satisfy his prima facie case is satisfied by a showing that 1) he belongs to the protected class, 2) he was qualified for a position for which applicants were being sought, 3) he suffered an adverse employment action, and 4) he was replaced by a younger employee, or treated less favorably than a similarly situated younger employee. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir.2002).

Here, it is uncontested that plaintiff, being 58 years old at the time of his dismissal, is a member of the protected class, and was qualified for the position that he had. Plaintiff worked for Southwest for nearly 40 years. Rec. Doc. 1 at 4. Further, he was subjected to an adverse employment action, namely that he was terminated from his position.[5] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir.2004)("[A]n adverse employment action consists of 'ultimate employment decisions such as hiring, granting leave, *discharging*, promoting, and compensating.'")(emphasis added). Plaintiff also explicitly references in his complaint that he was replaced by Sean Reynolds, an employee 15 years his junior at the time of plaintiff's termination and replacement. Rec. Doc. 1 at 4. Clearly, plaintiff has satisfied his initial burden under

---

[5] Plaintiff was given the choice to resign or be terminated and chose the latter. Rec. Doc. 31-3 at para. 21.

*McDonnell* to show that he has made out a prima facie case of discrimination.

The next step in the *McDonnell* analysis shifts the burden of production to the defendant to articulate a legitimate, nondiscriminatory reason for its decision to terminate plaintiff. *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016). Defendant contends that the record undisputedly provides plaintiff violated Southwest's safety policy regarding shipping generators. Southwest's Safe Transportation of Regulated Materials Manual states in pertinent part:

> Internal Combustion engines are considered Class 9 Miscellaneous HAZMAT if they have a trace of fuel present. Even engines that have been drained contain enough vapors to be considered a regulated material aboard aircraft. Examples of internal combustion engines include weed trimmer, generators, chainsaws, lawnmowers, tillers, and engine-powered skateboards/scooters. Southwest airlines prohibits and does not transport internal combustion engines whether they are new or used.

Rec. Doc. 31-5 at 2, *Affidavit of Bridget Butler*.

Plaintiff was familiar with this policy, and aware that historically, Southwest did not ship internal combustion generators. Rec. Doc 31-2 at 50, *Deposition of Plaintiff*. Although Southwest's policy states that they do not permit generators to be shipped, at one point, following Hurricane Maria, Southwest temporarily altered their shipping policy to allow *employees* to ship generators to Puerto Rico to assist with relief efforts for a ten (10) day period. Rec. Doc. 31-5 at 2, *Affidavit of Bridget*

*Butler*. Plaintiff contends that while he was aware of the change in policy, he believed, without material support, that the policy was permanent, and there was no longer a safety issue with shipping generators via plane. Rec. Doc. 54 at 4.

Southwest had a long-standing policy that shipping internal combustion engines was prohibited, for the entirety of plaintiff's working relationship with defendant. 31-5 at 2, *Affidavit of Bridget Butler*. Further, the stated change in policy was *temporary*, and only allowed for the shipment of generators by Southwest *employees*, not Southwest Customers. *Id*. Plaintiff conducted the shipment on behalf of Southwest customer Sal's Seafood. Rec. Doc. 31-2 at 59, *Plaintiff's Deposition*. As such, plaintiff undisputedly violated a long-standing, yet temporarily altered for a period of just ten days, policy that had been in place for the entirety of plaintiff's career, notwithstanding his incorrect and unfounded assumption to the contrary. As a result, defendant has met its burden of articulating a legitimate non-discriminatory reason for not promoting plaintiff.

Thus, the burden shifts to plaintiff to raise genuine issue of material fact(s) as to whether the Defendant's proffered reasons are merely a pretext for age discrimination. Plaintiff has offered no material facts to meet this burden. However, plaintiff does note in his recently produced affidavit that his New Orleans Station Manager, Cindy Perrino, made comments about plaintiff' age

and stated, "the need for new blood in cargo." Rec. Doc. 50-3 at 2, *Plaintiff's Affidavit*. This was not mentioned in the record at *any* point before the filing of the instant motion for summary judgment. Further, the statement conflicts with plaintiff's deposition testimony. In Southwest's reply brief, it points to a section of plaintiff's deposition that reads as follows: "Q. Did Ms. Perrino or Mr. Cummins ever make any comments to you that related to your age at all? A. Other than asking me when I was going to retire, no." Rec. Doc. 47-1 at 1. This Court therefore disregards the statement in plaintiff's new affidavit, as it contradicts his deposition testimony. *See Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) ("a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.").

Plaintiff also contends that another, younger, Southwest Employee, Beth Fielding, was terminated and subsequently reinstated for shipping a generator is evidence that plaintiff's termination was age-based discrimination. This contention is unpersuasive. Plaintiff failed to show that Fielding was similarly situated to plaintiff, as such she cannot fairly be considered a comparator. "To show disparate treatment, a plaintiff must demonstrate that her employer treated another employee differently 'under nearly identical circumstances,' i.e., 'when the employees being compared held the same job or responsibilities, shared the

15

same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. *Katseanes v. Time Warner Cable, Inc.*, 511 F. App'x 340, 345 (5th Cir. 2013)(quoting *Lee v. K.C. S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir.2009) (footnotes omitted)).

As an initial matter, both plaintiff and Fielding were terminated as a result of their conduct. Rec. Doc. 54-5 at 11, *Beth Fielding's Deposition*. Plaintiff and Fielding also did not share the same position, as Fielding was a Cargo Agent, whereas plaintiff was a "Cargo Customer Service Supervisor." Rec. Doc. 1 at 4; *see also* Rec. Doc. 54-5 at 11, *Fielding Deposition*. Plaintiff also failed to establish that Fielding worked in New Orleans, or under the supervision of Cindy Perrino, or that he and Fielding had comparable violation histories, as addressed below. Further, Fielding was a Union Member, whereas plaintiff was not. Therefore, plaintiff's attempt to establish that a similarly situated, and younger employee was treated differently fails.

Plaintiff offers no other facts to suggest that plaintiff's termination was pretext for discrimination. Southwest notes that plaintiff had already been terminated once for theft and dishonesty in 2006 and was subsequently reinstated to his position after an investigation. Rec. Doc. 31-1 at 3. This was in reference to his instructions to a Customer Service Agent to provide airline tickets for him, his daughter, and friend at a discounted price. *Id*. Again,

plaintiff stated that he was unaware that's Southwest's policies prevented him from receiving discounted tickets. *Id*. After a determination that plaintiff had participated in conduct that Southwest could not "condone or overlook" it agreed to reinstate him only if he reimbursed the company for its lost revenue, which he subsequently did. *Id*.

After plaintiff's reinstatement, with back pay and without any loss of seniority or benefits, he engaged in a good working relationship with his supervisor for approximately ten years. *Id*. at 3-4. Rec. Doc. 31-2 at 29, *Plaintiff's Deposition* ("the relationship started out good in 2017."); *see also* 31-3 at 1-2, *Declaration of Perrino* ("From the time that Southwest reinstated him in until June 2017, I felt that [plaintiff] and I had a good working relationship. He received favorable performance evaluations and I never took any disciplinary action against him."). Further, in his deposition testimony, plaintiff stated that he was satisfied with his performance reviews and deemed them to be fair. Rec. Doc. 31-2 at 28, *Plaintiff's Deposition*. Plaintiff was also issued a written warning in 2017 to address several performance related issues. Rec. Doc. 31-2 at 32. Specifically, the document referred to plaintiff disseminating incorrect information to another employee and making an unapproved scheduling decision. *Id*. at 81, *Disciplinary Warning*.

17

With respect to the issue over which plaintiff was ultimately terminated, the decision was not taken lightly by Perrino, and not based on plaintiff's age. The record reflects that Perrino was fifty-six at the time that plaintiff was terminated, placing her and plaintiff in the same class. Rec. Doc. 31-3 at 3. Further, although Perrino replaced plaintiff with a younger employee, Sean Reynolds, the stated reasons for his lateral replacement were that he had worked for Southwest for 23 years, had extensive experience with cargo, had previously worked as an operations supervisor, and his position had recently been eliminated. *Id.*

Defendant has shown that it is entitled to judgment as a matter of law, as plaintiff cannot present evidence to meet his burden pursuant to *McDonnell* that defendant's stated reason for terminating him amounted to pretext for discrimination based on age. Plaintiff: (1) undisputedly violated a long-standing Southwest policy, which was temporarily altered and resumed effectiveness after the stipulated ten-day period; (2) had already been terminated once for dishonesty and theft, after which he was reinstated; and (3) had recently received a written warning regarding performance related issues. When these facts are taken together, it is evident that plaintiff will not be able to meet his burden under *McDonnel*. Accordingly, summary judgment is granted in favor of defendant Southwest regarding plaintiff's claims under the ADEA and LEDL.

New Orleans, Louisiana this 14th day of July, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE